# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Ryan H.,[1] | : |
| | : |
| | : Case No. 2:23-cv-02296 |
| Plaintiff, | : |
| v. | : Judge Graham |
| | : |
| Commissioner of Social Security, | : Magistrate Judge Bowman |
| | : |
| Defendant. | : |

## OPINION & ORDER

Plaintiff Ryan H. ("Plaintiff") initiated this action challenging the nondisability finding made by Defendant Commissioner of Social Security ("Commissioner"). *See* Statement of Errors, doc. 11. The Magistrate Judge issued a Report and Recommendation ("R&R") which found Plaintiff's Statement of Errors unpersuasive and recommended that the Commissioner's nondisability finding be affirmed. Doc. 14. Plaintiff's objections to the R&R are now before the Court and ripe for ruling. Doc. 16. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the R&R, in full, and therefore **AFFIRMS** the Commissioner's nondisability finding and **DISMISSES** this case.

## STANDARD OF REVIEW

### *Social Security*

The Magistrate Judge accurately set forth the relevant standards which guide the benefit determination decisions of the Social Security Administration as well as the standard of review applied by the Court when reviewing such decisions:

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[1]

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a

reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A)…

Under 20 C.F.R. § 416.920c(a), an ALJ must evaluate the "persuasiveness" of each medical opinion by considering multiple factors, the "most important" of which are "supportability" and "consistency." *Id*.; 20 C.F.R. § 916.920c(b)(2). Supportability focuses on the provider's explanations for his or her opinions,

[3]

> including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2). The regulations include a mandatory articulation requirement to "explain how [the adjudicator] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b)(2).

Doc. 14, # 1474-75.[2]

*Objections to a Report and Recommendation*

If a party raises timely objections to the report and recommendation of a magistrate judge, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 904 (E.D. Mich. 2021) "The filing of objections provides the district court with the opportunity… to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 904 (E.D. Mich. 2021) (quoting *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) and *Thomas v. Arn*, 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)). Therefore, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).

---

[2] Page numbers following the "#" symbol refer to the ECF PAGEID numbering system.

## SUMMARY OF ADMINISTRATIVE RECORD

Neither party raises any issues with the Magistrate Judge's recitation of the administrative record in the R&R:

> On September 18, 2018, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging disability beginning the date of his application based on a combination of impairments primarily relating to residual effects from childhood cancers and his corresponding treatments. After his application was denied initially and on reconsideration, Plaintiff sought an administrative hearing. On May 19, 2022, Administrative Law Judge ("ALJ") Gregory Kenyon held an evidentiary hearing at which Plaintiff and his father provided testimony, together with an impartial vocational expert. ([A.R.] 268-309).[3] On June 21, 2022, ALJ Kenyon issued an adverse written decision. ([A.R.] 240-267). The Appeals Council denied further review on May 12, 2023, leaving the ALJ's decision as the final decision of the Commissioner. Proceeding through the same counsel who represented him at his administrative hearing, Plaintiff filed this appeal.
>
> Plaintiff was 18 years old on the date of his alleged disability and remained in the "younger individual" age category through the date of the ALJ's decision. He completed high school and, at the time of the hearing, was enrolled as a senior at The Ohio State University, Marion campus. ([A.R.] 247). In college, he has earned mostly A's and B's in coursework designed to lead to a degree in social work. ([A.R.] 285). He currently lives with his parents. ([A.R.] 274). Plaintiff has no past relevant work and no employment at a level that would qualify as substantial gainful activity. However, in

---

[3] Citations to the Administrative Record ("A.R.," *see* doc. 7), including to hearing transcripts, refer to the Bates number(s) printed on the bottom-right corner.

addition to attending college, he has worked 20-25 hours per week as a cashier for Discount Drug Mart since 2018. ([A.R.]246; [A.R.] 278; see also [A.R.] 755 (reporting that he obtained a job at Discount Drug Mart while a senior in high school)).

Most of Plaintiff's impairments are residuals from a combination of childhood cancers and the chemotherapy that he underwent to survive them. The ALJ determined that Plaintiff has the following severe impairments: "residuals of a remote prior juvenile pilocytic astrocytoma (brain cancer) including bilateral foot drop and fascial paralysis, residuals of a lumbar laminectomy, residuals of leukemia and resulting radiation and chemotherapy including loss of all hearing in right ear, and partial loss of hearing in the left ear." ([A.R.] 246). The ALJ also determined that Plaintiff has nonsevere impairments of "bilateral foot pain secondary to gastrocnemius equinus, hammer toe and hallux valgus," and a "mental impairment of an adjustment disorder with depressed mood." ([A.R.] 247). Plaintiff does not dispute the ALJ's conclusion that none of his impairments, either singly or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([A.R.] 251).

The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the sedentary exertional capacity, further limited as follows:

> occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no exposure to hazards such as unprotected heights or dangerous machinery; no operation of automotive equipment; no concentrated exposure to vibrations; occasional use of the lower extremities for pushing and pulling; and no concentrated exposure to loud noise.

> ([A.R.] 252). Based upon testimony from the vocational expert ("VE"), the ALJ concluded that Plaintiff remains capable of performing jobs that exist in significant numbers in the national economy, including the representative jobs of Charge Account Clerk, Bench Assembler, and Weight Tester. ([A.R.] 260). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act. ([A.R.] 261).

## DISCUSSION

Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his analysis of the opinion evidence provided by Dr. Natalie Meyer (consulting psychologist), Dr. Herbert Grodner (consulting physician), and Dr. Philip Simon (treating physician). The Magistrate Judge found no error as to the analysis of opinion evidence from Dr. Meyer and Dr. Grodner. The Magistrate Judge found an "articulation error" in the analysis of the opinion evidence from Dr. Simon, but concluded that the error was harmless, and remand was unwarranted. In his objections, Plaintiff argues that the error was not harmless, and also states his objections to the conclusions as to Dr. Meyer and Dr. Grodner but refers only to the arguments presented in his Statement of Errors. The Court addresses the challenged portions in the order they are presented in the R&R and the ALJ's decision.

### Dr. Meyer

Plaintiff contends that the ALJ failed to incorporate opinion evidence from Dr. Meyer into Plaintiff's RFC. Specifically, Plaintiff argues that the ALJ considered the opinions of Dr. Meyer "persuasive to the extent that they are consistent with the overall evidentiary record," (A.R., 250) but the ALJ failed to incorporate "any allowance for additional time," (doc. 11, # 1447) despite

[7]

Dr. Meyer opining that Plaintiff "might continue to require additional time to complete tasks." A.R., 250. Citing *Irvin v. Comm'r of Soc. Sec.*, Plaintiff argues "it is harmful error for an ALJ to find opinion evidence credible and thereafter fail to incorporate all aspects of the opinion into the [RFC] assessment." Doc. 11, # 1448 (citing 573 Fed.Appx. 498, 502 (6th Cir. 2014)).

In *Irvin*, the ALJ wrote that his RFC assessment "mirrored the findings" of two reviewing physicians. *Id.* However, both physicians had opined that the claimant had manipulative limitations, which the ALJ did not include in his RFC. *Id.* As such, by not incorporating "all aspects of the opinion[s]," (doc. 11, # 1448) the ALJ's decision was contradictory on its face, constituting error. *Id.*

The instant case shows no such contradiction. Here, the ALJ's findings as to the opinion evidence of Dr. Meyer are consistent with the ALJ's determinations as to Plaintiff's RFC. The ALJ found Dr. Meyer's opinions "persuasive to the extent they are consistent with the overall evidentiary record." A.R., 250. The short answer to Plaintiff's objection on this point is that an "additional time" limitation is *not* consistent with the overall evidentiary record, as sufficiently explained by the ALJ. Three (3) different doctors opined as to Plaintiff's mental impairments—Dr. Meyer, Dr. Katherine Fernandez, and Dr. David Dietz. *Id.* Of the three (3), only Dr. Dietz found that Plaintiff had *any* medically determinable mental impairment. *Id.* As the ALJ summarized, Dr. Dietz found that "[Plaintiff's] adjustment disorder was not severe in nature, as it had caused no more than mild limitation in his ability to interact with others and no limitations in his ability to understand, remember or apply information, concentrate, persist, or maintain pace and adapt or manage." *Id.* (citing A.R., 334-35). Dr. Fernandez "found no evidence of a medically determinable mental impairment." *Id.* (citing A.R., 318). Likewise, Dr. Meyer herself determined that Plaintiff "does not meet criteria for a DSM-5 diagnosis at this time." A.R., 757.

The Court also agrees with the Magistrate Judge's finding that "Dr. Meyer's vague and equivocal statements that Plaintiff 'may' need extra time or 'may' be slower to complete tasks than others his age simply do not equate to an opinion that Plaintiff requires any specific functional workplace limitation." Doc. 14, # 1481. Furthermore, those statements from Dr. Meyer are not based on her own observations of Plaintiff's functioning, but rather appear to be contextualizing her conclusions within Plaintiff's broader medical history. A.R., 758. Dr. Meyer observed that Plaintiff "had no difficulty following conversationally and responding to direct questions," and that "he was able to complete verbal reasoning and math calculation tasks." *Id.* But Dr. Meyer further noted,

> [Plaintiff's] processing speed was **previously assessed** to be a significant difficulty when compared with his other cognitive abilities. [Plaintiff] may be slower to complete tasks than other people his age. He receives extra time on tests, a scribe, and electronic notes prior to classes. He may continue to require additional time to complete tasks.

*Id.* (emphasis supplied). As the Magistrate Judge noted in the R&R, Plaintiff's additional-time accommodations were provided in an educational context—a context which "differs significantly from the performance of unskilled jobs in the workplace." Doc. 14, # 1482. In sum, the Court finds no error in the ALJ's consideration of Dr. Meyer's opinions and overrules Plaintiff's objections in that regard.

### Dr. Grodner

As with the analysis of Dr. Meyer's opinions above, Plaintiff's objection on this point refers only to the arguments made in his statement of errors. In other words, the objection is not specifically responsive to the reasoning in the R&R as to the opinion evidence of Dr. Grodner.[4] In

---

[4] The reasoning in the R&R, however, *is* specifically responsive to the arguments raised in Plaintiff's statement of errors.

his statement of errors, Plaintiff alleges two errors as to the ALJ's analysis of Dr. Grodner's opinions. First, Plaintiff contends that "the ALJ's analysis collapses the supportability and consistency factors, in stating that Dr. Grodner's clinical observations are generally consistent with the record as a whole." Doc. 11, # 1446. Second, Plaintiff contends that the ALJ failed to include upper-right extremity limitations in its formulated RFC, which Plaintiff alleges to be inconsistent with the Dr. Grodner's findings. *Id.*

As to the first error, alleging that the ALJ failed to properly articulate "how [he] considered the supportability and consistency factors" (20 C.F.R. § 416.920c(b)(2)), the Court agrees with the Magistrate Judge that "the ALJ adequately discussed both supportability and consistency here":

> With respect to "supportability," the ALJ noted that "Dr. Grodner had the opportunity to personally interview, observe, and objectively examine the claimant, [but] he did not provide a specific function-by-function analysis of what the claimant could do despite his impairments." (Tr. 258). With respect to "consistency," the ALJ found Dr. Grodner's "clinical observations and findings…[to be] generally consistent with the evidentiary record as a whole" and therefore found his opinion to be "persuasive to the extent it is not inconsistent with the …capacity to perform sedentary level work." (Tr. 258). Therefore, the ALJ sufficiently discussed each of the two factors. *Accord Hardy*, 2021 WL 4059310 *3 (affirming where the ALJ cited the applicable regulatory requirements, referenced that the medical source had conducted a clinical interview, and "implicitly observed" that the opined limitation was "not supported by information in his report and his own observations … during the evaluation.").

Doc. 14, # 1485. The articulation requirement as to the supportability and consistency factors does not require a specific level of detail. *See* Revisions to Rules Regarding the Evaluation of Medical

[10]

Evidence, 82 FR 5844-01 ("the appropriate level of articulation will necessarily depend on the unique circumstances of each claim."). Plaintiff has articulated no argument which would dissuade the Court from following the persuasive reasoning of the Magistrate Judge.

As to the second error, the Court agrees with the Magistrate Judge's conclusion that the ALJ's omission of right-arm limitations in Plaintiff's RFC "is substantially supported by Dr. Grodner's report as well as by the record as a whole." Doc. 14, # 1486. The ALJ observed that Dr. Grodner did not "provide a specific function-by-function analysis" of Plaintiff's functional capacity.[5] A.R., 258. Specifically, relevant to Plaintiff's right arm, Dr. Grodner noted:

> He had a mild weakness, 4 out of 5, in the right upper extremity and right lower extremity… Grip strength was 10 psi on the right and 20 psi on the left with the dynamometer. At this time, he is more left-hand dominant. He could grasp and manipulate. He picked up a small coin and paperclip without difficulty.

A.R., 765. Plaintiff contends that, due to the ALJ's omission of limitations pertaining to Plaintiff's right arm, the RFC "allows for constant use of the right upper extremity, despite Dr. Grodner's indication of difficulty with repetitive movement on the right side and primary use of his left, non-dominant hand."[6] Doc. 11, # 1446-47. Furthermore, Plaintiff argues that the Vocational Expert ("VE") "testified that a restriction to occasional use of the dominant upper extremity for handling and fingering would eliminate all but one sedentary occupation." *Id.* at # 1447.

Setting aside the ambiguity as to which is Plaintiff's "dominant" side, the Magistrate Judge observed that "no medical source opined that Plaintiff was limited to 'occasional' handling and fingering—a limitation that would be inconsistent with Plaintiff's ongoing employment as a

---

[5] The Court understands this to refer to the fact that Dr. Grodner's report does not specifically address the Plaintiff's capacity in the terms listed in 20 C.F.R. § 416.922, such as, e.g., "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," and that his report does not distill his findings into an RFC summary.

[6] In his report, Dr. Grodner states that Plaintiff "is right-hand dominant" (A.R., 763) before later noting "at this time, he is more left-hand dominant." A.R., 765. Plaintiff's testimony similarly indicates that, despite his original right-handedness, he has developed functional aptitude with his left hand. *See* A.R., 279 ("I used to write right-handed but slowly I drifted to my left hand.").

[11]

cashier." Doc. 14, # 1487. As such, the Court finds no error with ALJ's analysis of the opinion evidence from Dr. Grodner.

### Dr. Simon

The bulk of Plaintiff's briefing on his objections concerns the opinion evidence from his treating physician, Dr. Philip Simon. As to this evidence, the Magistrate Judge concluded,

> In sum, both the physical and mental RFC as determined were substantially supported. Any different RFC opinions by Dr. Simon were so lacking in support that the ALJ's failure to explicitly discuss their supportability was harmless on the record presented.

Doc. 14, # 1494-95. Plaintiff specifically objects to the "harmless" finding, arguing that the failure to articulate the supportability factor "prejudiced Plaintiff on the merits." Doc. 16, # 1501 (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009)).

Plaintiff cites *Rabbers* for the proposition that the ALJ's failure to follow the regulations constitutes "reversible error." Doc. 16, # 1501. But his reliance on *Rabbers* appears unfounded, as the Sixth Circuit ultimately held that "the ALJ's failure to rate the B criteria, while error, was harmless in this case." 582 F.3d at 661. In *Rabbers*, the court discussed the (since-abandoned) "treating physician rule," which required additional weight given to a treating source, and how an ALJ's failure to adhere to that rule was not harmless when it undermined "[an] important purpose" of the rule: "to ensure that a claimant understands the disposition of his or her case." *Id.* at 657. But even that error could be harmless when "the treating physician's opinion is 'so patently deficient that the Commissioner would not possibly credit it.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The Social Security Administration did away with the treating physician rule in 2017, though the claimant's understanding of the disposition of their case remains no less important. But in that regard, the Court disagrees with Plaintiff's contention

[12]

that remand is required because "without fuller explanation, [the Court] cannot engage in meaningful review of the ALJ's decision." Doc. 16, # 1502 (quoting *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021)).

In this case, as to Dr. Simon's opinion evidence, the ALJ determined:

> While some of the limitations assessed by Dr. Simon are consistent with and supported by the evidentiary record, and have been partially incorporated in the residual functional capacity herein, his opinion that the claimant was limited to sedentary level work for a maximum of six hours per day and could work for less than three consecutive weeks per month is not supported by the totality of the objective evidence. Nor is this limitation consistent with the claimant's demonstrated activities of daily living, including attending college while working part-time 20-25 hours per week performing above sedentary level work-related activity.

A.R., 259. The Court is satisfied that the ALJ sufficiently articulated the supportability and consistency factors as to the opinion evidence of Dr. Simon. Plaintiff argues that the ALJ's statement that a portion of Dr. Simon's opinion "is not supported by the totality of the objective evidence" (*id.*) is flawed because it "collapses the consistency and supportability factors into one analysis and fails to acknowledge the distinction between, and specific analysis relevant to, the two factors." Doc. 11, # 1444.

For support, Plaintiff cites *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919 (N.D. Ohio Apr. 29, 2021), but, like *Rabbers*, supra, *Reusel* does not provide the support that Plaintiff seeks. In *Reusel*, the court observed that the ALJ's analysis came "dangerously close to mixing up 'supportability' and 'inconsistency.'" 2021 WL 1697919 at *7 n.6. But the court further observed that "the law does not require ALJ's to use perfect diction… only that ALJs provide enough context for the court to trace their reasoning." *Id.* Thus, despite the ALJ describing an opinion as—like Dr. Simon's here—"not supported by the evidence," the *Reusel* court could conclude that "this was plainly an inconsistency finding." *Id.*

[13]

Similarly, here, the Court has no difficulty tracing the reasoning of the ALJ. As Plaintiff's primary care physician, Dr. Simon saw Plaintiff for a variety of issues, most of which were entirely unrelated to his disabling conditions. *See* doc. 14, # 1488 (describing Dr. Simon's treatment history of Plaintiff as including a pre-operative exam, an ER follow-up, an appointment to prescribe an antidepressant, and treatment for conjunctivitis). "Therefore," the Magistrate Judge concluded, "it is clear that Dr. Simon relied solely on Plaintiff's medical history." *Id.* at # 1492. To the extent that Dr. Simon opined on postural limitations based on Plaintiff's medical history, the ALJ discussed the pertinent medical records throughout the opinion, and, in any event, determined that Plaintiff should be limited to sedentary work. *Id.* In sum, the Court finds no error as to the ALJ's consideration of Dr. Simon's opinion, therefore overrules Plaintiff's objections in that regard.

## CONCLUSION

For the reasons set forth above, the Court find no error in the ALJ's non-disability determination. Therefore, Plaintiff's objections are **OVERRULED**, the Magistrate Judge's R&R is **ADOPTED**, the Commissioner's non-disability finding is **AFFIRMED**, and this case is **DISMISSED**.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 11, 2025